1  JOHN R. HABASHY – SBN 236708
   (john@lexiconlaw.com)
2  **LEXICON LAW PC**
   633 W. Fifth St., 28th Floor
3  Los Angeles, CA  90071
   Telephone: 213-233-5900
4  Fax:  888-373-2107

5  Local Counsel for Plaintiff and the Proposed Class

6  Ryan M. Kelly (Pro Hac Vice to be submitted)
   (rkelly@andersonwanca.com)
7  **ANDERSON + WANCA**
   3701 Algonquin Road, Suite 500
8  Rolling Meadows, IL 60008
   Telephone: 847-368-1500
9  Fax: 847-368-1501

10
   Counsel for Plaintiff and the Proposed Class
11
                    **UNITED STATES DISTRICT COURT**
12
                    **CENTRAL DISTRICT OF CALIFORNIA**
13

14  TERRY D. FABRICANT, individually     **Case No.:** 2:19-cv-07232
    and as the representative of a class of
15  similarly-situated persons,

16                          Plaintiff,          **CLASS ACTION COMPLAINT**

17       v.

18  TOP FLITE FINANCIAL, INC., a
19  Michigan corporation,

20
                            Defendant.
21

22

23

24

25

26

27

28

Plaintiff Terry D. Fabricant ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint") against Defendant, Top Flite Financial, Inc., ("Defendant"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under the TCPA, a federal statute, and has pendent jurisdiction under California Penal Codes § 632.7 and § 637.2.

2.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in this District.

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 because this case involves federal questions. This court has pendent jurisdiction over the California statutory claims which arise out of the same set of operative facts.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in this District.

## INTRODUCTION

5.     Plaintiff brings this Complaint against Defendant to secure redress because Defendant willfully violated the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA" or "Act") and invaded Plaintiff's privacy by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer, called Plaintiff's cellular telephone which was listed on the National Do Not Call Registry, sent text messages to Plaintiff without prior written express consent, and violated the

California Penal Code 632.7 by recording at least two (2) telephone calls without Plaintiff's or the other class members' knowledge or consent.

6.     The Defendant made one or more unauthorized call to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") for the purpose of soliciting consumer loans from Plaintiff.  The Act states an "automatic dialing system" means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B).

7.     The TCPA was enacted to protect consumers from unsolicited telephone calls and unsolicited messages exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities and sending unsolicited text messages to consumers, and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, prejudgment interest, and treble damages (for knowing and/or willful violations).

## PARTIES

8.     Plaintiff, Terry D. Fabricant, is a citizen of California, residing in Los Angeles, California.

9.     Defendant, Top Flite Financial, Inc., is a Michigan corporation with its principal place of business in Williamston, Michigan.

10.    Whenever in this Complaint it is alleged that Defendant committed any act or omission it is meant that Defendant's officers, directors, employees, and/or agents committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, employees, and agents.

1

2                      **LEGAL BASIS FOR THE CLAIMS**

3          11.     In 1991, Congress enacted the TCPA to regulate the explosive growth

4    of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted

5    telemarketing ... can be an intrusive invasion of privacy...." Telephone Consumer

6    Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. §

7    227).

8          12.     Specifically,    the    TCPA    restricts   telephone    solicitations   (i.e.,

9    telemarketing) and the use of automated telephone equipment. The TCPA limits the

10   use of automatic dialing systems, and SMS text messages. It also specifies several

11   technical requirements for autodialers and voice messaging systems - principally

12   with provisions requiring identification and contact information of the entity using

13   the device to be contained in the message.

14         13.     All ATDS calls to wireless numbers violate the TCPA if the calling

15   party does not first obtain express written consent from the called party.

16         14.     As of October 16, 2013, unless the recipient has given prior express

17   written consent, the TCPA and Federal Communications Commission ("FCC")

18   rules under the TCPA generally:

19                      a.  Prohibit solicitors from calling residences before 8 a.m. or after 9

20                          p.m., local time.

21                      b.  Require that solicitors provide their name, the name of the person

22                          or entity on whose behalf the call is being made, and a telephone

23                          number or address at which that person or entity may be contacted.

24                      c.  Prohibit solicitations to residences that use an artificial voice or a

25                          recording.

26                      d.  Prohibit any call made using automated telephone equipment or an

27                          artificial or prerecorded voice to a wireless device or cellular

28                          telephone.

     e.  Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone, or any service for which the recipient is charged for the call.

     f.  Prohibit certain calls to members of the National Do Not Call Registry.

15.   Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

16.   An entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity making the call on its behalf.

17.   Finally, with respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

## COMMON FACTUAL ALLEGATIONS

18.     Defendant operates a consumer loan company. Unfortunately for consumers, Defendant utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting its services. On information and belief, Defendant obtained these telephone numbers (i.e., leads) by purchasing marketing lists containing consumers' telephone numbers.

19.     In Defendant's overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Class, but also intentionally and repeatedly violated the TCPA.

20.     On or about April 15, 2019, Defendant twice contacted Plaintiff on his cellular telephone number via ATDS, as defined by 47 U.S.C. § 227(a)(l) without first obtaining Plaintiff's written consent. Two additional calls were placed by Defendant on April 18, 2019.

21.     Plaintiff's cellular phone number has been included in the National Do Not Call Registry prior to 2014.

22.     Plaintiff also was sent a text message on April 15, 2019. A true and correct copy of the text message from 424-383-5733 is attached hereto as Exhibit A.

23.     On information and belief, and based on the circumstances of the call as described above, Defendant called Plaintiff using an ATDS because there were pauses of several seconds and clicks before a live person started speaking.  Plaintiff had no business relationship with Defendant, and Defendant is located over 2,000 miles from Plaintiff.

24.   Due to the number and frequency of calls, it was obvious to Plaintiff that a computer was dialing his number.

25.   Plaintiff understood the purpose of Defendant's call was to have Plaintiff apply for a consumer loans offered by Defendant.

26.   Plaintiff is the exclusive user of the cellular telephone that Defendant called.

27.   Defendant's call to Plaintiff constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(l)(A)(i).

28.   Plaintiff did not provide Defendant with prior express written consent to receive calls to his cellular telephone utilizing an ATDS and/or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

29.   Defendant's call which utilized an ATDS invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

30.   Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone consumers to market its products and services without consent required by the TCPA.

31.   In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, et seq., which prohibits certain unsolicited voice  and text calls to cell phones.

32.   On behalf of Plaintiff and the Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing activities and an award of statutory damages to the Class members, together with prejudgment interests, and costs.

## COUNT I
## VIOLATONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227 FOR THE USE OF AN ATDS

33.   Plaintiff restates, re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

34.   Defendant made unsolicited and unauthorized calls using an ATDS to Plaintiff's and the Class members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Class.

35.   Plaintiff made the calls without obtaining prior express written consent from Plaintiff and the Class.

36.   The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

37.   Defendant's conduct invaded Plaintiff's privacy.

38.   As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

39.   Because Defendant had knowledge that Plaintiff and the Class did not consent to the receipt of the aforementioned telephone solicitations, and Defendant knowing and intentionally made the telephone solicitations to Plaintiff, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the Class.

40.   Plaintiff and the class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

41.   Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of:

All persons in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or any other device having the capacity to dial numbers without human intervention, from four years prior to the date of filing of this Complaint until the date

Defendant's conduct ceases, where the call(s) were made without prior express written consent from the recipient to make such call.

Excluded from the class are employees and agents, of Defendants as well as members of the judiciary.

42.     Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter.

43.     Plaintiff and the Class members were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class via their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; and Plaintiff and Class members' privacy was invaded.

44.     The exact size of the Class is presently unknown but can be ascertained through a review of Defendant's records, and it is clear that individual joinder is impracticable. On information and belief Defendant made telephone calls to thousands of consumers who fall within the definition of the Class.

45.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

46.     Common questions for the Class include, without limitation:

a.     Whether Defendant's conduct violated the TCPA;

b.     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after;

c.     Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

d.      Whether Defendant systematically made telephone calls to consumers using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service without prior express written consent of the called party; and

e.      Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

47.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

48.     Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions.

49.     Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

50.     This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making an award of damages and final injunctive relief appropriate with respect to the Class as a whole.

51.     Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

52.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

53.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

54.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

55.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

56.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

<u>**COUNT II**</u>
<u>**VIOLATION OF 47 U.S.C. 227(C) —**</u>
<u>**TELEMARKETING IN VIOLATION OF THE TCPA'S DO NOT CALL**</u>
<u>**PROVISIONS**</u>

57.     Plaintiff restates, re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

58.     Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do Not Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written consent.

59.     The TCPA was enacted more than twenty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

60.   Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

61.   These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Id.

62.   Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. Id. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. Id.

63.   A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

64.   Telemarketers who wish to avoid calling numbers listed on the Registry can easily and inexpensively do so by "scrubbing" their call lists against the Registry database. The scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

65.   To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. See 16 C.F.R. § 310.4(b)(3)(iv).

66.     Regulations implementing the TCPA also require entities to maintain internal Do Not Call registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber not to receive calls, the number must be placed on the entity's internal registry within a reasonable time, not to exceed thirty days from the date of the request. Id. at § (d)(3).

67.     A seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

68.     The provision that establishes a private right of action against an entity that violates the DNC Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to an entity's internal Do Not Call registry, "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

69.     As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

70.     The agency reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for

Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

71.     The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. In re Joint Pet. Filed by Dish Network, 28 FCC Rcd. 6574 (2013).

72.     Between April 15, and April 19, 2019, Plaintiff received four telemarketing calls and a text message on his cellular telephone line, a number he had listed on the Do Not Call Registry prior to 2014 from Defendant.

73.     These calls were placed in an effort to sell Plaintiff consumer loan services.

74.     Because Plaintiff did not provide Defendant with a signed, written agreement to receive Defendant's telemarketing calls, the calls violated the TCPA.

75.     Plaintiff brings this Count pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of:

> All persons whose telephone numbers were listed on the Do Not Call Registry, and to whom, during the four years prior to the filing of this Complaint, more than one call within any twelve-month period was placed by or at the direction of, to promote the sale of Defendant's services.

Excluded from the class are employees and agents of Defendant as well as members of the judiciary.

76.     Plaintiff reserves the right to modify the class definition as the shape and contours of the class become apparent in discovery.

77.     The proposed class can be identified through telephone records and databases used in transmitting the telemarketing calls.

78.     The number of class members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

79.     Plaintiff is a member of the proposed class.

80.     There are questions of law and fact common to the claims of Plaintiff and the proposed Class, including but not limited to the following:

    a. Did Defendant place telemarketing calls to Plaintiff and class members?

    b. Is Defendant liable under TCPA § 227(c) for telemarketing calls?

    c. Were the calls placed under Defendant's actual authority?

    d. Were the calls placed under Defendant's apparent authority?

    e. Did Defendant ratify the illegal conduct by accepting the benefit of its illegally-generated business and failing to exercise its authority to end the violations?

    f. Were the calls placed for Defendant's benefit, or on Defendant's behalf?

    g. Did Defendant place telemarketing calls to persons on the National Do Not Call Registry?

81.     Plaintiff's claims are typical of the claims of the classes. Like all class members, he received Defendant's telemarketing calls on a number listed on the National Do Not Call Registry.

82.     Plaintiff is an adequate class representative because his interests do not conflict with class members' interests, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in TCPA and other class actions.

-15-

83.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

84.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to pursue individual litigation; the low dollar-value of individual claims; the lack of an attorney fee-shifting provision in the TCPA; the fact that class members are unlikely to know that their rights have been violated; and the fact that few if any recipients of Defendant's telemarketing calls have brought private TCPA enforcement actions against Defendant.

85.    In violation of 47 U.S.C. § 227(c), Plaintiff and all class members received telemarketing calls promoting the sale of Defendant's services on cellular telephone lines listed on the National Do Not Call Registry.

86.    Plaintiff and class members received more than one such call in a twelve- month period.

87.    Defendant is liable for those violations under principles of actual authority, apparent authority, and ratification, and because the calls were placed on Defendant's behalf and for their benefit.

## COUNT III
## UNSOLICITED TEXT MESSAGE

88.    Plaintiff restates, re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

89.    On or about April 15, 2019, Plaintiff received a text message ("Text") on his cellular telephone asking him to confirm he needs "$5,000.00 cash out."  A true and correct copy of the screen shot of the Text is attached hereto as Exhibit A.

90.     The text identifies that it was sent from telephone number 424-383-5733. Plaintiff is informed and believes, upon such information and belief avers, that Defendant sent text messages to consumers *en masse*.

91.     The text is an advertisement of Defendant's services containing automated content.

92.     On information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the Text to Plaintiff's cellular telephone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A) and the FCC. Defendant's system placed the Texts to Plaintiff automatically, using a list or database of telephone numbers, and dialing without human intervention.

93.     Plaintiff never requested, desired, permitted, or otherwise provided his prior express consent to Defendant to send or transmit the Text or any other texts to his cellular telephone.

94.     Plaintiff never provided his prior express written consent to Defendant to send or transmit the Texts or any other advertisement or telemarketing to his cellular telephone.

95.     As a result of receiving the Text, Plaintiff wasted data storage capacity, suffered the nuisance, waste of time, and aggravation that accompanies receipt of such unauthorized advertisements, and was subjected to an intrusion upon seclusion and invasion of privacy.

96.     On information and belief, Defendant sent the Text, or substantially similar text messages, *en masse* to a list of thousands of randomly generated cellular telephone numbers using an automatic telephone dialing system.

97.     On information and belief, Defendant sent text messages to the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers without human intervention.

98.    On information and belief, the Class members did not provide Defendant with prior express written consent to receive such text messages and, as a result, incurred expenses to their wireless services, wasted data storage capacity, suffered the aggravation that accompanies receipt of such unauthorized advertisements, and were subjected to an intrusion upon seclusion.

99.    Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this class action on behalf of the following Class:

> All persons or entities who, within the four years prior to the filing of the instant Complaint, received a non-emergency, unauthorized text message to their cellular telephones from Defendant through the use of an automatic dialing system and who did not provide prior express consent and/or prior express written consent to receive such text messages.

Excluded from the Class are the Defendant and its employees, agents and members of the Judiciary.

100.    Plaintiff reserves the right to amend the class definition as discovery reveals the shape and contours of the class.

101.    The exact size of the Class is presently unknown but can be identified through a review of Defendant's records and records of Defendant's vendors and it is clear that individual joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of Class members is at least forty (40) based on Defendant's use of automated text message content.

102.    Plaintiff's claims are typical of the claims of all Class members. Plaintiff received the same or substantially similar unsolicited text message as the other Class members sent by or on behalf of Defendant advertising goods and services of the Defendant during the Class Period. Plaintiff is making the same

claims and seeking the same relief for itself and all Class members based upon the same federal statute.

103.   Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

104.   Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

        a.   Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

        b.   Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

        c.   Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class members;

        d.   The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

        e.   The case is inherently manageable as a class action in that:

                i.   Defendant identified persons or entities to receive the unauthorized text messages and Defendant's computer and business records will likely enable Plaintiff to readily identify class members and establish liability and damages;

ii.   Liability and damages can be established for Plaintiff and the Class with the same common proofs;

iii.   Statutory damages are provided for in the statute and are the same for all Class members and can be calculated in the same or a similar manner;

iv.   A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

v.   A class action will contribute to uniformity of decisions concerning Defendant's practices; and

vi.   As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

105.   The Text Defendant sent Plaintiff is an advertisement as defined by 47 C.F.R. § 64.1200(f)(1) because it promotes Defendant's services.

106.   Defendant and/or its agents sent the Text, or substantially similar unsolicited automated text messages to the cellular telephone number of Plaintiff and the other Class members *en masse* without their prior express consent and prior express written consent.

107.   Defendant sent the text messages, or had them sent on its behalf, using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

108.   Defendant utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

109.   By sending the unsolicited text messages to Plaintiff and the Class, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV

## VIOLATION OF CALIFORNIA PENAL CODE 632.7

110.   This Count arises out of Defendant's policy and practice of recording and/or intercepting, without the consent of all Parties, telephone calls with Plaintiff. Plaintiff received no warning that his calls could be recorded or monitored. Plaintiff did not consent to the recording of his telephone calls.

111.   Defendant employs telemarketers to find consumers who are in need of consumer loans.

112.   On or about 15, 2019 and April 18, 2019, Defendant intentionally and surreptitiously recorder and/or intercepted (i.e., monitored) at least two (2) telephone calls it made to Plaintiff. Defendant did so without warning or disclosing to Plaintiff that his conversations might be recorded or intercepted/ monitored. (The term "intercept" and "monitor" are used interchangeably in this count.)

113.   Defendant's policy and practice of recording and intercepting telephone conversations without the consent of all parties violates California's Invasion of Privacy Act (Penal Code §§ 630, *et seq.*). Specifically, Defendant's policy and practice violates Penal Code § 632.7., which prohibits the recording or intercepting (i.e., monitoring) of a communication made from a cellular or cordless telephone without the consent of all parties to the communication.

114.   As a result of Defendant's violations, all individuals who were called by Defendant or who calls without disclosure that the call would be recorded are entitled to an award of statutory damages and injunctive relief as set forth in Penal Code § 637.2.

**Factual Allegations**

115.   Plaintiff is informed and believes and on that ground, alleges that Defendant's employees and agents make and receive incoming calls originating from within the United States, including calls from California callers.

116.   Plaintiff is informed and believes and on that ground, alleges that, at all times on or before April 15, 2019 through at least April 18, 2019, Defendant intentionally used technology consisting of hardware and/or software to carry out a practice and policy of recording and/or intercepting (i.e., monitoring) calls without warning caller that their calls and conversations could be recorded or monitored

117.   On or about April 15, 2019 and April 18, 2019, Defendant's telemarketers called Plaintiff from 818-237-4850 and recorded both calls without any warning of the recording being provided to Plaintiff.

118.   During both of Defendant's telephone calls to Plaintiff, Defendant failed to disclose to Plaintiff that their telephone conversations with Defendant were being recorded and/or monitored. Plaintiff did not and could not have given consent for the telephone calls to be recorded or monitored because he was unaware that Defendant was engaged in that practice during the telephone calls. Plaintiff is informed and believe and that ground allege that callers who called or were called by Defendant's telemarketers on or before April 15, 2019 were not informed by Defendant or anyone else that their calls were being recorded and/or monitored. Thus, that recording and/or monitoring necessarily occurred without the callers' knowledge or consent.

119.   Because there was no warning that calls would be recorded or monitored, Plaintiff has a reasonable expectation that his telephone conversations with Defendant's employees and agents were, and would remain, private and confines to the parties on the telephone. That recording and/or monitoring without

their consent is highly offensive to Plaintiff and would be highly offensive to a reasonable person, including members of the proposed Plaintiff Class.

120.   Plaintiff brings this Count IV under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the class (the "Class") defines as follows:

> All California residents who, at any time during one year preceding the original filing of this Complaint, used a cellular device or cordless telephone located in California to call or receive calls which were recorded and/or monitored by Defendant surreptitiously or without disclosure.

Excluded from the class are employees and agents of Defendants as well as members of the judiciary.

121.   The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using the Defendant's records and/or Defendant's vendors to determine the size of the Class and to determine the identities of the individual Class members. Plaintiff reserves the right to amend or modify the Class definitions or to add subclasses or limitations to particular issues.

122.   By its unlawful actions, Defendant has violated Plaintiff's and the Class's privacy rights under California's Invasion of Privacy Act, California Penal Code § 630 *et seq*. The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

123.   Plaintiff's claims are typical of those of the Class, as Plaintiff's now suffer from the same violations of the law as other putative Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions to represent him and the Class, and Plaintiff will fairly and adequately represent the interests of the Class.

124.   Based on the information and belief, the Class consists of more than 40 individuals, making the joinder of individual cases impracticable.

125.   Based on the information and belief, the Class consists of more than 40 individuals, making the joinder of individual cases impracticable.

126.   There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions of law and fact include, without limitation, the following:

        a.   Whether Defendant has a policy or practice of recording and/or intercepting cellular telephone calls it makes or receives.

        b.   Whether Defendant had a policy or practice of not disclosing to callers made to Defendant or received from Defendant that their calls might be recorded and/or monitored.

        c.   Whether Defendant had a policy or practice of not obtaining callers' consent to record and/or monitor telephone calls.

        d.   Whether Defendant violated California Penal Code § 632.7 by recording and/or monitoring telephone calls without warning or disclosure.

        e.   Whether Class members are entitled to statutory damages of $5,000 under Penal Code § 637.2 for every violation of Penal Code § 632.7.

127.   Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of the other Class members.

128.   A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because the individual litigation of the

claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous putative Class members who simply will be unable to enforce individual claims of this size on their own, or who will never even learn that their privacy rights were surreptitiously violated. Certification also will prevent harm to Defendant's competitors, which otherwise will be placed at a competitive disadvantage as their reward for obeying the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

129.   The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications or that would substantially impair or impede the ability of those non-party Class members to protect their interests.

130.   The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

131.   Plaintiff participated in at least two telephone calls that were received by him in California and that came from one of Defendant's loan solicitors. Plaintiff used a cellular telephone to engage in the conversations.

132.   Plaintiff is informed and believes and on that ground alleges that, at all relevant times, Defendant had a policy and practice of using hardware and/or software that enabled it to surreptitiously record and/or monitor calls from Plaintiff and Class members who used cellular or cordless telephones.

133.   Plaintiff is informed and believes and on that ground alleges that, at all relevant times, Defendant had a policy and practice of using hardware and/or software that enabled it to surreptitiously record and/or monitor calls from Plaintiff and Class members who used cellular or cordless telephones.

134.   Defendant had a policy and practice of not disclosing to Plaintiff or Class members that their calls with Defendant's telemarketers and loan solicitors might be recorded and/or monitored, Defendant did not obtain and could not have obtained Plaintiff's or Class members' express consent to the recording or monitoring of those conversations. Because of that nondisclosure, Plaintiff and Class members had an objectively reasonable expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place.

135.   Defendant's conduct as described above violated California Penal Code § 637.2. Plaintiff and Class Members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages. That is the amount expressly deemed proper by the California Legislature. Plaintiff and Class members are also entitled to injunctive relief to enjoin further violations.

1

**PRAYER FOR RELIEF**

2

3        WHEREFORE, Plaintiff, Terry Fabricant, individually and on behalf of the

4   Class, respectfully requests the following relief against Defendant, Top Flight

5   Financial, Inc.:

6               a. An order certifying this matter as a class action with Plaintiff as

7                  Class Representative, and designating Anderson + Wanca as lead

8                  Class Counsel;

9               b. An order declaring that the actions of Defendant, as described

10                 above, violate the California Penal Code § 632.7;

11              c. An award of statutory damages for each and every negligent

12                 violation to each member of the Class pursuant to 47 U.S.C. §

13                 227(b)(3)(B);

14              d. An award of statutory damages for each and every knowing and/or

15                 willful violation to each member of the Class pursuant to 47 C.F.R.

16                 § 64.1200;

17              e. A judgment for an award of the statutory damages to the Plaintiff

18                 and other members of the Class under California penal code §

19                 632.7;

20              f. Injunctive relief prohibiting the Defendant's conduct complained of

21                 herein, pursuant to 47 U.S.C. § 227(b)(3)(A) and California penal

22                 code § 632.7; and

23              g. For such other and further relief as the Court deems necessary, just,

24                 and proper.

**JURY DEMAND**

25       Plaintiff, individually and on behalf of the Class, demands a jury trial on all

26   issues so triable.

27

28

1    DATED: August 20, 2019          LEXICON LAW PC

2

3                                    By:  /s/John R. Habashy
                                     JOHN R. HABASHY
4

5                                    ANDERSON + WANCA
                                     RYAN M. KELLY *(pro hac vice to be*
6                                    *submitted)*

7                                    Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28